UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re | ) Case No. 05-17697 |
| ENTERGY NEW ORLEANS, INC., | ) |
| Debtor. | ) Chapter 11 |
| | ) Section B |

**FINAL ORDER (I) AUTHORIZING DEBTOR TO USE CASH COLLATERAL AND TO OBTAIN POST-PETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363(c)(1), 363(c)(2), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) AND 364(e) AND (II) GRANTING ADEQUATE PROTECTION TO PRE-PETITION SECURED PARTIES PURSUANT TO 11 U.S.C. §§ 361, 362, 363 AND 364 AND (III) APPROVING STIPULATION.**

Upon the motion (the "DIP Motion"),[1] dated September 23, 2005, of Entergy New Orleans, Inc., the debtor and debtor-in-possession (the "Borrower or the Debtor") in the above-captioned case (the "Chapter 11 Case"), pursuant to sections 105, 361, 362, 363(c)(1), 363(c)(2), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) of title 11 of the United States Code (the "Bankruptcy Code"), and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), seeking, among other things, authorization for the Debtor to obtain post-petition financing (the "Financing"), up to the aggregate principal amount outstanding at any one time of $200 million, from Entergy Corporation (the "DIP Lender") and to use certain cash collateral;

Notice of the DIP Motion, the relief requested therein and the final hearing held on December 7, 2005 (the "Final Hearing") has been served by the Debtor in accordance with Rules

{N1434916.1}

4001(b) and (c) on the twenty (20) largest unsecured creditors of the Debtor, on the DIP Lender, Hibernia National Bank ("Hibernia"), the Pre-Petition Bond Trustee (defined below), the United States Trustee for the Eastern District of Louisiana, and counsel to the Official Committee of Unsecured Creditors appointed in the Chapter 11 Case (the "Committee");

Interim hearings on the DIP Motion having been held by this Court on September 26, 2005 and on October 26, 2005 (the "Interim Hearings", and the orders entered thereon, the "Interim Orders");

The Court having considered the record on the DIP Motion, including the Interim Hearing, the pleadings filed in connection with the Debtor's Motion for Partial Summary Judgment, the responses filed by various parties-in-interest, including the objections filed by the Pre-Petition Bond Trustee, Financial Guaranty Insurance Company as insurer of a portion of the Mortgage Bonds, Deutsche Bank Securities, Inc. and the Committee and all objections having been resolved (except the objection by the Pre-Petition Bond Trustee) on terms read into the record on December 7, 2005, by counsel for the DIP, the Committee, Financial Guaranty Insurance Company and Deutsche Bank Securities, Inc., (the "Stipulation") and after due deliberation and consideration and sufficient cause appearing therefor;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1. *Jurisdiction*. This Court has core jurisdiction over the Chapter 11 Case, the DIP Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. *Notice*. The notice given by the Debtor of the DIP Motion and the Final

---

[1] Capitalized terms used but not defined herein have the meaning given in the DIP Motion.

{N1434916.1}  2

Hearing constitutes due and sufficient notice thereof, and complies with sections 102(1), 363(c), 364(c) and 364(d) of the Bankruptcy Code and with Bankruptcy Rules 4001(b) and (c).

    3.    *Interim Orders*.  Except to the extent modified hereunder, the findings of fact, conclusions of law and decretal provisions of the Interim Orders shall remain in full force and effect.

    4.    *Remaining Objections Overruled*.  The objection of the Pre-Petition Bond Trustee, being the only objection not resolved at the Final Hearing, is hereby overruled.

    5.    *Findings of Fact and Conclusions of Law Regarding the Financing and Use of Cash Collateral*.  In addition to the findings of fact and conclusions of law as stated by the Court on the record at the Interim Hearings and the findings and conclusions as set forth in the Interim Orders, the Court hereby makes the following additional findings of fact and conclusions of law:

    (a)    Good cause has been shown for the entry of this Order.

    (b)    The Debtor has an immediate need for the Court to authorize the Financing and use of cash collateral, if any, in order to permit, among other things, the repairing and rebuilding of its business and operations in the wake of Hurricane Katrina, the orderly continuation of the operation of its business, to maintain business relationships with vendors, suppliers and customers, to make payroll and to satisfy other working capital and operational needs.  The ability of the Debtor to obtain sufficient capital to repair and rebuild and reestablish its business and operations and to obtain sufficient working capital and liquidity through the use of cash collateral, incurrence of new indebtedness for borrowed money and other financial accommodations is vital to the

preservation and maintenance of the going concern value of the Debtor and to a successful reorganization of the Debtor.

(c) The Debtor has been unable to obtain financing from sources other than the DIP Lender on more favorable terms than under the DIP Agreement and is unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtor is also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2), 364(c)(3) and 364(d)(1) of the Bankruptcy Code without the Debtor granting to the DIP Lender, subject to the Carve-Out as provided for herein, the DIP Liens and the Superpriority Claims (each as defined below) under the terms and conditions set forth in this Order and in the DIP Agreement. The terms of the Financing and the use of Cash Collateral, are fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and constitute reasonably equivalent value and fair consideration.

(d) The Hibernia Adequate Protection Liens adequately protect the interest of Hibernia, if any, as set forth in sections 361, 363(e) and 364(c) of the Bankruptcy Code.

(e) The Additional Liens adequately protect the interest of the Pre-Petition Bond Trustee, for itself and on behalf of the Bondholders, if any, as set forth in sections 361, 363(e) and 364(c) of the Bankruptcy Code.

(f) The Financing has been negotiated in good faith between the Debtor and the DIP Lender, and all of the Debtor's obligations and indebtedness arising under, in respect of or in connection with the Financing and the DIP Agreement, including, without limitation, (i) all loans made to the Debtor pursuant to the DIP

Agreement, (ii) any other Obligations (as defined in the DIP Agreement) and (iii) any other obligations of the Debtor to the DIP Lender hereunder or under any of the Interim Orders, (all of the foregoing in clauses (i), (ii) and (iii) collectively, the "DIP Obligations"), have been extended by the DIP Lender in good faith, as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise. This finding shall be applicable solely to the Financing authorized by the Order and shall not have any effect (preclusive or otherwise) with regard to any other matter or claim in this bankruptcy case.

(g) The Debtor has requested entry of this Order pursuant to Bankruptcy Rules 4001(b) and 4001(c). Absent entry of this Order, the Debtor's estate will be immediately and irreparably harmed. Consummation of the Financing and the use of Cash Collateral, if any, in accordance with this Order and the DIP Agreement is therefore in the best interest of the Debtor's estate.

6. *Authorization of the Financing and the DIP Agreement*.

(a) The Debtor is hereby authorized to enter into the DIP Agreement. The Borrower is hereby authorized to borrow money pursuant to the DIP Agreement, up to an aggregate principal or face amount outstanding at any one time of $200,000,000 (plus interest and other expenses provided for in the DIP Agreement), subject to the discretion of the DIP Lender, in accordance with the terms of this Order and the DIP Agreement, which shall be used for all purposes permitted under the DIP Agreement.

(b) In furtherance of the foregoing and without further approval of this Court, the Debtor is authorized to do and perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution or recordation of security agreements, mortgages and financing statements), and to pay all amounts that may be reasonably required or necessary for the Debtor's performance of its obligations under the DIP Agreement, including, without limitation:

(i) the execution, delivery and performance of the DIP Agreement,

(ii) the execution, delivery and performance of one or more amendments to the DIP Agreement in such form as the Debtor and the DIP Lender may agree; *provided*, that the Debtor shall provide such notice as is practicable of any proposed amendments, and it is understood that no further approval of this Court shall be required for amendments to the DIP Agreement that do not shorten the maturity of the extensions of credit thereunder, do not increase the maximum aggregate amount of indebtedness that may be incurred thereunder, and do not increase the rate of interest or other amounts payable thereunder,

(iii) the non-refundable payment to the DIP Lender of reasonable costs and expenses as may be due from time to time, including, without limitation, reimbursable fees and reasonable and documented expenses of the professionals retained by the DIP Lender as provided for in the DIP Agreement, and

(iv) the performance of all other acts required or advisable

under or in connection with the DIP Agreement.

(c) Upon execution and delivery of the DIP Agreement and the entry of this Order, *nunc pro tunc* to the Petition Date, the DIP Agreement and this Order shall constitute the valid and binding obligations of the Debtor, enforceable against the Debtor in accordance with the terms of the DIP Agreement and this Order. No obligation, payment, transfer or grant of security under the DIP Agreement or this Order or any of the Interim Orders shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law (including without limitation, under section 502(d) of the Bankruptcy Code), or subject to any defense, reduction, setoff, recoupment, counterclaim or subordination.

7. *Superpriority Claims*.

(a) Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed claims against the Debtor with priority over any and all administrative expenses, diminution claims (including all Hibernia Adequate Protection Obligations (as defined below)) and all other claims against the Debtor, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 507(a), 507(b), 726, 1113, 1114 or any other provisions of the Bankruptcy Code (the "Superpriority Claims"), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall be payable from and have recourse to all pre- and post-petition property of the Debtor and all proceeds thereof, subject only

to the payment of the Carve-Out to the extent specifically provided for herein.

(b)     For purposes hereof, the "Carve-Out" means (A) all allowed professional fees and disbursements incurred by the professionals retained pursuant to Bankruptcy Code §§ 327 or 1103(a) by the Debtor and Committee (and any disbursements of any member of such Committee) (i) in an aggregate allowed amount not to exceed $500,000 on account of such professional fees and disbursements incurred following an Event of Default (as defined in the DIP Agreement) (such $500,000 limit not applying to amounts incurred prior to the Event of Default but for which no fee application has yet been filed and/or approved), and (B) all fees required to be paid to the Clerk of the Bankruptcy Court and to the United States Trustee under section 1930(a) of title 28 of the United States Code.  Prior to the occurrence of an Event of Default, the Debtor may pay the aggregate allowed amount of all unpaid professional fees and disbursements incurred, accrued or invoiced from the Petition Date until an Event of Default; *provided*, that all such professional fees and disbursements to the extent allowed shall be paid pursuant to any applicable interim compensation procedures established in an order of the Bankruptcy Court and shall be subject to final allowance by order of the Bankruptcy Court under sections 330 and 331 of the Bankruptcy Code.  The DIP Lender shall not be responsible for the direct payment or reimbursement of any professional fees or disbursements incurred in connection with the Chapter 11 Case under any chapter of the Bankruptcy Code, and nothing in this Order or otherwise shall be construed to obligate the DIP Lender in any way to pay professional fees or disbursements or any other liability of the Debtor whatsoever, or to ensure that the Debtor has sufficient funds to pay such professional fees or disbursements or liabilities.

{N1434916.1}                                                            8

8. *DIP Liens*. As security for the DIP Obligations, effective and perfected upon the date of this Order, *nunc pro tunc* to the Petition Date, the following security interests and liens are hereby granted to the DIP Lender (all property identified in clauses (a), (b) and (c) below being collectively referred to as the "Collateral"), subject to the payment of the Carve-Out (all such liens and security interests granted to the DIP Lender pursuant to this Order and the DIP Agreement, the "DIP Liens"):

(a) First Lien on Property. Pursuant to sections 364(c)(2) and 364(d) of the Bankruptcy Code, the DIP Lender is hereby granted a valid, binding, continuing, enforceable, fully-perfected first priority senior security interest in and lien upon all pre- and post-petition property of the Debtor, whether existing on the Petition Date or thereafter acquired, including without limitation, all cash and cash collateral of the Debtor (whether maintained with the DIP Lender or otherwise) and any investment of such cash and cash collateral, inventory, accounts receivable, intercompany notes, tax refund claims, insurance proceeds and tort claims whether arising before or after the Petition Date, contracts, properties, plants, equipment, general intangibles, documents, instruments, interests in leaseholds, real properties, chattel paper, fixtures, deposit and other accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, any rights with any regulatory or other federal or state agencies, including any grants, subsidies, incentives or other relief provided to victims of Hurricane Katrina and the proceeds of all the foregoing, except on any pre- and post-petition property of the Debtor, whether existing on the Petition Date or thereafter acquired, that, on or as of the Petition Date is subject to valid, perfected and non-avoidable liens, security interests or rights of setoff of Hibernia. For the avoidance

of doubt, the first priority liens and security interests granted under this paragraph shall be, pursuant to section 364(d)(1) of the Bankruptcy Code, senior to the liens and security interests of The Bank of New York (successor to Harris Trust Company of New York and Bank of Montreal Trust Company) as Trustee and Stephen J. Giurlando (successor to Mark F. McLaughlin and Z. George Klodnicki) as Co-Trustee (in such capacity, collectively, the "<u>Pre-Petition Bond Trustee</u>") pursuant to a Mortgage and Deed of Trust dated as of May 1, 1987 (as supplemented or amended from time to time, the "<u>Pre-Petition Indenture</u>") in respect of all real and personal property of the Debtor (the "<u>Bond Collateral</u>") in the Bond Collateral and any Additional Liens granted to the Pre-Petition Bond Trustee pursuant to this Order. The foregoing notwithstanding, the senior liens and security interests granted hereunder shall not extend to the funds in the Hibernia Payment Processing Account or property subject to the Hibernia Adequate Protection Liens.

    (b) <u>Liens Junior to Certain Other Liens</u>. Pursuant to section 364(c)(3) of the Bankruptcy Code, the DIP Lender is hereby granted valid, binding, continuing, enforceable, fully-perfected security interests in and liens upon all pre-petition and post-petition property of the Debtor (other than the property described in clause (a) of this paragraph, as to which the liens and security interests in favor of the DIP Lender will be as described in such clauses), whether now existing or hereafter acquired, that is subject to valid, perfected and unavoidable liens, security interests or rights of setoff in existence in favor of Hibernia.

    (c) <u>Liens Senior to Certain Other Liens</u>. The DIP Liens and the Adequate Protection/Additional Liens (as defined below) shall not be subject or subordinate to (i) any lien or security interest that is avoided and preserved for the benefit

of the Debtor and its estate under section 55l of the Bankruptcy Code or (ii) any liens arising after the Petition Date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtor.

9. *The Hibernia Cash Collateral*. For purposes of this Order, the term "Hibernia Cash Collateral" shall mean and include all "cash collateral" as defined in section 363 of the Bankruptcy Code, deposits subject to setoff, and cash arising from the collection, sale, lease or other disposition, use or conversion to cash of any property of the Debtor in which and solely to the extent that Hibernia has any valid, perfected and unavoidable liens, security interests or rights of setoff, whether such liens, security interests or rights of setoff (including, without limitation, any adequate protection liens or security interests) existed on the Petition Date or arise thereafter pursuant to this Order or any other order of the Court, applicable law or otherwise. For purposes of the Debtor's authority to use cash collateral under this Order, the term Hibernia Cash Collateral shall not include the $15,057,050.00 in Hibernia account #xxxxx8188 (the "Hibernia Payment Processing Account").

10. *Use of Hibernia Cash Collateral*. In connection with and as an integral part of the grant to the DIP Lender of the security interest in cash collateral hereinabove set forth, the Debtor is hereby authorized to use all Hibernia Cash Collateral, if any, of Hibernia. Hibernia is granted adequate protection as hereinafter set forth in respect of the use of the Hibernia Cash Collateral.

11. *The Bondholder Cash Collateral*. For purposes of this Order, the term "Bondholder Cash Collateral" shall mean and include all "cash collateral" as defined in

section 363 of the Bankruptcy Code, deposits subject to setoff, and cash arising from the collection, sale, lease or other disposition, use or conversion to cash of any property of the Debtor, including the proceeds of insurance on the Debtor's pre-petition property.

12. *Use of Bondholder Cash Collateral.* In connection with and as an integral part of the grant to the DIP Lender of the security interest in cash collateral hereinabove set forth, the Debtor is hereby authorized to use all Bondholder Cash Collateral of the Pre-Petition Bond Trustee. The Pre-Petition Bond Trustee (for itself and for the benefit of the Bondholders) is granted adequate protection as hereinafter set forth in respect of the use of the Bondholder Cash Collateral.

13. *Adequate Protection/Additional Liens.*

(a) Pursuant to sections 361 and 363(e) of the Bankruptcy Code, Hibernia is granted, to secure an amount equal to the amount of Hibernia Cash Collateral used and any decrease in the value of Hibernia's liens, security interest and rights of setoff, subsequent to the petition Date (the "Hibernia Adequate Protection Obligations"), a replacement lien, security interest and right of setoff in the Hibernia Payment Processing Account and the Debtor's post-petition account receivables, which replacement lien, security interest and right of setoff will have the same validity and priority and be subject to the same rights, claim and defenses as such liens, security interests and rights of setoff existed prior to the Petition Date subject only to the Carve-Out (the "Hibernia Adequate Protection Liens").

(b) Pursuant to the Stipulation and sections 361, 363(e) and 364(d) of the Bankruptcy Code, the Pre-Petition Bond Trustee (for itself and for the benefit of the Bondholders) in order to secure all obligations under the Indenture, subject to the terms

of the Stipulation, is granted a lien in all of the Debtor's assets securing the DIP Lien, which lien will be junior in priority to the liens and security interests of the DIP Lender granted hereunder, but shall be senior to all other liens and security interests other the liens and security interests in favor of Hibernia which is senior to the liens and security interests of the DIP Lender, subject only to the Carve-Out (the "Additional Liens" and, together with the Hibernia Adequate Protection Liens, the "Adequate Protection/Additional Liens"). The Bondholder Additional Liens adequately protect the interest of the Pre-Petition Bond Trustee in the Bond Collateral pursuant to sections 363(e) and 364(d)(1)(B) of the Bankruptcy Code, and the furnishing to the Pre-Petition Bond Trustee of the adequate protection provided herein is, with respect to the Debtor and the DIP Lender, an integral part of the approval of the Financing and the DIP Liens provided for herein.

  14. *Perfection of DIP Liens and Adequate Protection/Additional Liens*.

  (a) The DIP Lender, the Pre-Petition Bond Trustee and Hibernia are hereby authorized, notwithstanding section 362(a) of the Bankruptcy Code, but are not required, to execute, file or record, as appropriate, financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction or take any other action in order to validate and perfect the liens and security interests granted to them hereunder. Whether or not the DIP Lender with respect to the DIP Liens or Hibernia or the Pre-Petition Bond Trustee with respect to the Adequate Protection/Additional Liens shall, in its or their sole discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments or otherwise confirm perfection of the liens and security interests

granted to them hereunder, except as otherwise provided herein, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination, at the time and on the date as set forth in this Order. The failure to make or record any such filings or the delay thereof shall not affect the grant, perfection extent or priority of any liens, security interests or rights of setoff granted hereunder. Upon the request of the DIP Lender, the Pre-Petition Bond Trustee or Hibernia, each of the DIP Lender, the Pre-Petition Bond Trustee and Hibernia, without any further consent of any party, is authorized to take, execute and deliver such instruments (in each case without representation or warranty of any kind) to enable the DIP Lender, the Pre-Petition Bond Trustee or Hibernia to further validate, perfect, preserve and enforce the DIP Liens (in the case of the DIP Lender) or the Adequate Protection/Additional Liens (in the case of the Pre-Petition Bond Trustee and Hibernia).

(b) A certified copy of this Order may, in the discretion of the DIP Lender, the Pre-Petition Bond Trustee or Hibernia, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized and directed to accept such certified copy of this Order for filing and recording.

15. *Collection of Cash*. As set forth in the DIP Agreement, all cash receipts of or by the Debtor shall be promptly paid to the DIP Lender for application to the DIP Loans, subject to reborrowing in accordance with the terms thereof.

16. *Preservation of Rights Granted Under the Order*.

(a) No claim or lien having a priority superior to or *pari passu* with those granted by this Order to the DIP Lender shall be granted or allowed while any

portion of the Financing (or any refinancing thereof) or the commitments thereunder or the DIP Obligations remain outstanding, whether under section 364(d) of the Bankruptcy Code or otherwise.

(b) Unless all DIP Obligations shall have been paid in full in cash and the DIP Agreement shall have been terminated (collectively, the "DIP Pay-Out"), the Debtor shall not seek, and it shall constitute an Event of Default (in addition to any other Event of Default contained in the DIP Agreement) if the Debtor seeks, or if there is entered, (i) any modifications or extensions of this Order without the prior written consent of the DIP Lender, and no such consent shall be implied by any other action, inaction or acquiescence by the DIP Lender, or (ii) an order dismissing the Chapter 11 Case. If an order dismissing the Chapter 11 Case under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that the rights, liens, claims and security interests granted pursuant to this Order shall continue in full force and effect and shall maintain their priorities as provided in this Order.

(c) If any or all of the provisions of this Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacation or stay shall not affect (i) the validity or enforceability of any DIP Obligations incurred prior to the actual receipt of written notice by the DIP Lender of the effective date of such reversal, modification, vacation or stay or (ii) the validity, priority, perfection or enforceability of any security interest, lien or priority authorized or created hereby or pursuant to the DIP Agreement with respect to any DIP Obligations. Notwithstanding any such reversal, stay, modification or vacation, all obligations and other financial accommodations made

pursuant to this Order, all DIP Obligations and any use of Cash Collateral, if any, Collateral, Pre-Petition A/R Collateral or Bond Collateral, by the Debtor prior to the actual receipt of written notice by the DIP Lender of the effective date of such reversal, stay, modification or vacation shall be governed in all respects by the original provisions of this Order, and the DIP Lender shall be entitled to all the rights, remedies, privileges and benefits granted herein, including, without limitation, the DIP Liens and the Superpriority Claims.

(d) Except as expressly provided in this Order or in the DIP Agreement, the DIP Liens and the Superpriority Claims and all other rights and remedies of the DIP Lender granted by the provisions of this Order and the DIP Agreement shall survive, and shall not be modified, impaired or discharged by the entry of an order converting the Chapter 11 Case to a case under chapter 7, dismissing the Chapter 11 Case, or by any other act or omission, nor shall the DIP Liens or the Superpriority Claims or any of the other rights and remedies of the DIP Lender granted by the provisions of this Order and the DIP Agreement be modified, impaired or discharged by the entry of an order confirming a plan of reorganization in the Chapter 11 Case and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtor has waived any discharge as to any remaining DIP Obligations and such waiver is hereby approved. The terms and provisions of this Order and the DIP Agreement shall continue in the Chapter 11 Case, or in any superseding chapter 7 case under the Bankruptcy Code, and the DIP Liens, the Superpriority Claims and all other rights and remedies of the DIP Lender granted by the provisions of this Order and the DIP Agreement shall continue in full force and effect until the DIP Obligations are indefeasibly paid in full.

(e) The DIP Lender, the property securing the Financing and the liens and security interests granted to the DIP Lender hereunder shall not be subject to any charge or claim under section 506(c) of the Bankruptcy Code or any similar provisions of the Bankruptcy Code or any other applicable law or equitable principle.

17. *Limitation on Use of Financing Proceeds and Collateral.* Notwithstanding anything herein, no borrowings, Cash Collateral, Collateral or the Carve-Out may be used to (i) object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of any amount due under the DIP Agreement, the liens or claims granted to the DIP Lender under this Order or the DIP Agreement, (ii) assert any action for preferences, fraudulent conveyances, other avoiding power claims, subordination or any other any claims, counterclaims or causes of action, objections, contests or defenses against the DIP Lender or its affiliates (other than the Debtor) or their respective agents, affiliates, representatives, attorneys or advisors; provided however that this provision (ii) shall not be applicable to the Committee or its professionals, (iii) prevent, hinder or otherwise delay the DIP Lender's enforcement or realization on its Collateral in accordance with the DIP Agreement or this Order or (iv) seek to modify any of the rights granted to the DIP Lender under the DIP Documents or this Order, in each of the foregoing cases without the DIP Lender's prior written consent.

18. *Order Governs*. In the event of any inconsistency between the provisions of this Order and the DIP Agreement, the provisions of this Order shall govern.

19. *Binding Effect; Successors and Assigns*. The DIP Agreement and the provisions of this Order, including all findings of fact and conclusions of law herein, shall

be binding upon all parties in interest in the Chapter 11 Case, including, without limitation, the DIP Lender, Hibernia, the Pre-Petition Bond Trustee (for itself and for the benefit of the Bondholders), any Committee appointed in the Chapter 11 Case, and the Debtor and its successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of the Debtor) and shall inure to the benefit of the DIP Lender, Hibernia, the Pre-Petition Bond Trustee (for itself and for the benefit of the Bondholders), and the Debtor and its successors and assigns; *provided*, *however*, that no chapter 7 trustee or similar responsible person appointed for the estate of the Debtor shall succeed to any of the rights of the Debtor under the DIP Agreement.

20. *Stipulation.* The Stipulation is fair to all parties and is hereby approved and incorporated herein in all respects. To the extent there is any inconsistency between the provisions of the preceding paragraphs of this Order and the provisions of the Stipulation as incorporated by this paragraph 20, the provisions of the Stipulation and this paragraph 20 shall govern.

New Orleans, Louisiana, December 9, 2005.

*/s/ J. A. Brown*
_____
Jerry A. Brown
U.S. Bankruptcy Judge

{N1434916.1} 18