UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:                                                    CASE NO. 05-17697

ENTERGY NEW ORLEANS, INC.                                SECTION "B"

    DEBTOR                                               CHAPTER 11

<u>REASONS FOR ORDER</u>

This matter came on for hearing on July 13, 2006 on motions for summary

judgment filed by the debtor, Entergy New Orleans, Inc., the debtor's parent company,

Entergy Corporation, Inc., and the debtor's affiliates, Entergy Services, Inc., and Systems

Fuels, Inc.  The motions for summary judgment sought denial of the motion for

certification of classes filed by the Gordon plaintiffs and the Lowenburg plaintiffs; the

motions for summary judgment also requested that the class proofs of claim filed by those

plaintiffs be disallowed.  For the reasons set forth below, the debtor's motion for

summary judgment is granted in part; the court declines to apply Fed.R.Bankr.P. 7023 to

this contested matter and will not certify either the Gordon plaintiffs or the Lowenburg

plaintiffs as a class.  The court denies the motion as to the objection to the class proofs of

claim filed by each group.  The court finds that the documentation appended to each proof

of claim is sufficient at this time.

## I.    <u>Background Facts</u>

The debtor is a utility company serving the New Orleans area, and is subject to the

regulatory jurisdiction of the New Orleans City Council.  It is a wholly owned subsidiary

of Entergy Corporation, a public utility holding company subject to the Public Utility

Holding Act of 1935.  The debtor filed for Chapter 11 protection on September 17, 2005

because of the damage caused to its operations and equipment by Hurricane Katrina,

which caused severe damage to the Greater New Orleans area on August 29, 2005.

The Gordon plaintiffs are a group of the debtor's customers who in 1999 filed a

class action suit against the debtor, its parent company, and other Entergy subsidiaries in

the Civil District Court for Orleans Parish in the state of Louisiana.[1]  The Gordon suit

asserts state law causes of action for restitution of loss of money, damages for violations

of Louisiana antitrust law, and damages for other state law violations, plus interest, costs

and declaratory and injunctive relief arising from the Gordon suit defendants' alleged

manipulation and abuse of fuel adjustment charges and other costs related to the debtor's

fuel adjustment clause filings.[2]  The Gordon suit also seeks certification as a class action.[3]

At the same time the Gordon plaintiffs filed their class action suit, they

commenced an administrative proceeding against the debtor with the New Orleans City

Council as required by state law.[4]  No decision on class certification was made in the

Gordon suit because the suit was stayed by the state district court pending the resolution

---

[1]  The suit, No. 99-5707, is entitled *Reverend C.S. Gordon, Jr., et al. v. Entergy New Orleans, Inc., Entergy Corporation, Entergy Services, Inc. and Entergy Power, Inc.*

[2]  See Motion and Memorandum for Certification of Classes (P-678).

[3]  *Id.*

[4]  *Daily Advertiser v. Trans-La*, 612 So.2d 7, 27 (La. 1993).

of the administrative proceeding.  In the administrative proceeding, the City Council

found that the debtor had in fact overcharged New Orleans ratepayers and awarded

$11,310,072 to ratepayers.  The debtor credited its ratepayers for the amount of the city

council's award.

The Gordon plaintiffs appealed the city council's decision because the award was

not as large as they had requested.  The appeal was pending before the Louisiana Fourth

Circuit Court of Appeal when the debtor filed its Chapter 11 petition.[5]  The debtor filed a

motion to lift stay in the bankruptcy court so that the appeal could continue, and the lift

stay motion was granted.  At that hearing, the Gordon plaintiffs requested that the stay

also be lifted as to the Gordon class action suit.  The bankruptcy court declined to lift the

stay as to the class action suit, but allowed that it would entertain a motion to lift stay in

that matter when the appeal of the City Council decision is complete.  After the hearing

on the motion to lift stay, the debtor removed the state court class action suit to the United

States District Court for the Eastern District of Louisiana under the theory that the suit

was related to the bankruptcy.   The class action suit remains stayed in the federal district

court, and no action has been taken since removal.  The Gordon plaintiffs were not

certified as a class in either the City Council proceeding or the state court suit that was

removed.

The Lowenburg plaintiffs are a group of the debtor's customers who filed a class

---

[5]  Case No. 2005-CA-1381 was argued before the Louisiana 4th Circuit Court of Appeal on
September 6, 2006.

3

action suit against the debtor on April 15, 1998 in the Civil District Court for the Parish of

Orleans alleging that the debtor charged rates in excess of what was allowed by the New

Orleans City Council ordinances governing the debtor.[6]  The state court ruled that before

the suit could proceed, the Lowenburg plaintiffs must first initiate an administrative

proceeding with the New Orleans City Council seeking an interpretation of the City

Council's ordinance.  The state court dismissed the Lowenburg suit without prejudice,

and the Lowenburg plaintiffs filed a complaint with the City Council on September 11,

2000.  That administrative proceeding was pending when the debtor filed for Chapter 11

protection.  The debtor subsequently filed a motion to lift stay to allow the Lowenburg

plaintiffs to proceed with the matter before the City Council, and this court granted the

motion.  On April 20, 2006, the City Council issued its ruling in the Lowenburg

administrative proceeding determining that the debtor had not violated the ordinance in

question by charging excessive rates.  The Lowenburg plaintiffs are currently appealing

that decision in the Louisiana state courts.  The Lowenburg plaintiffs were not certified as

a class in either the City Council proceeding or the state court lawsuit that was dismissed.

On January 19, 2006, the debtor filed a motion to set the last day to file proofs of

claim, requesting that the bar date be set on April 19, 2006.  The order granting that

motion was entered on February 17, 2006.  On March 3, 2006, the Gordon and

Lowenburg plaintiffs filed a joint motion requesting certification of classes.  They set the

---

[6] The suit, No. 98-6638, is entitled *Thomas P. Lowenburg, et al. v. Entergy New Orleans, Inc.*

4

motion for hearing on March 29, 2006.  The debtor, its parent, the Unsecured Creditors'

Committee, and the City Council filed objections to the motion.  At the hearing on the

motion, the debtor and its parent company agreed that they would not object to the filing

of a class proof of claim by the putative representatives of the Gordon and Lowenburg

plaintiffs on the grounds that class certification had not been granted prior to the filing of

the proof of claim.[7]  The parties then agreed to postpone the hearing on the motion

requesting certification of classes.  On April 18, 2006, one day before the bar date, the

Gordon and Lowenburg plaintiffs each filed a class proof of claim as agreed in the March

29, 2006 hearing, so that there would be a proof of claim filed before the bar date.[8]  On

May 11, 2006 the debtor filed objections to both the Gordon and the Lowenburg claims

on the basis that it is not possible from the face of the claims to determine how the claims

were calculated.  The debtor then filed the present motion for summary judgment asking

the court to deny class certification and disallow both of the class proofs of claim.


II.    <u>Legal Analysis</u>

A.    **Class Certification**

The court has extensively reviewed the cases on class certification in the

bankruptcy context and has concluded that the exact procedure to be followed in seeking

---

[7]  Transcript of excerpt of proceedings held March 29, 2006 (P-745) at pp.10, 12, 14, 16, 18-19.

[8]  The Gordon proof of claim is for "$82,796,573 plus", and the Lowenburg claim is for
"$240,000,000 plus".

class certification is unclear at best.  The United States Fifth Circuit Court of Appeal, which this court is bound to follow, has not ruled on the issue of class actions in bankruptcy courts except to approve a line of bankruptcy cases that have allowed a class representative in a certified class action to file a complaint under 11 U.S.C. § 523 that the debts owed to the class members be excepted from discharge.[9]  Thus, this court looks to other courts for instruction on how class certification and class proofs of claim should properly be addressed.

The United States circuit courts of appeal that have ruled on class certification in the bankruptcy context take two different approaches to the issue of filing a class proof of claim.  The minority view espoused by the Tenth Circuit holds that, "Class action procedures can be employed in a bankruptcy proceeding only to consolidate claims that have already been properly filed."[10]  In *Standard Metals,* the court held that a proof of claim filed by an investor for himself and on behalf of all other bondholders as a class was not allowed because the Bankruptcy Code does not permit filing a claim on behalf of a class.  In that case, the debt owed to the bondholders was not scheduled, nor was notice mailed to any of the bondholders of either the bankruptcy or the bar date for filing proofs of claim.  Although the Tenth Circuit did not allow the class proof of claim to be filed, on rehearing, it issued a *per curiam* opinion reversing the prior *Standard Metals* opinion and

---

[9]  *In re Davis,* 194 F.3d 570, 576 n.3 (5th Cir. 1999).

[10]  *In re Standard Metals Corp.,* 817 F.2d 625, 632 (10th Cir. 1987).

the orders of the bankruptcy court to the extent that the bankruptcy court did not require
the debtor to give actual notice to the bondholders and did not set a new bar date for the
filing of claims by those bondholders.[11]  Thus, although the class proof of claim was not
allowed in *Standard Metals,* the Tenth Circuit required the debtor to provide the putative
class members with actual notice of the bankruptcy and the bar date and extend the bar
date so that individual proofs of claim could be filed.

In contrast to the *Standard Metals* holding that class proofs of claim are
impermissible, the predominant line of cases addressing class proofs of claim, originating
with an opinion by the Seventh Circuit, allows a class representative to file a proof of
claim.[12]  In *American Reserve* the plaintiffs were insurance policy holders who filed a
class action suit against the debtor in state court.  Before the state court could decide
whether to certify the class, the debtor filed its bankruptcy petition, which stayed the state
court proceeding.  The plaintiffs then filed a class proof of claim to which the trustee for
the debtor filed an objection.  The court held that the filing by a representative of a  class
proof of claim was clearly contemplated by Fed.R.Bankr.P. 7023,[13] which could be made
applicable to contested matters by Fed.R.Bankr.P. 9014,[14] and that it was within the

---

[11]  *Sheftelman v. Standard Metals Corp.,* 839 F.2d 1383 (10th Cir. 1987).

[12]  *In re American Reserve Corp.,* 840 F.2d 487 (7th Cir. 1988).

[13]  Bankruptcy Rule 7023 states: "Rule 23 F.R.Civ.P. applies in adversary proceedings."

[14]  Bankruptcy Rule 9014(c), which applies to a contested matter in a case ... not otherwise
governed by these rules, states in part: "The court may at any stage in a particular matter direct
that one or more of the other rules in Part VII shall apply."

bankruptcy judge's discretion to apply Rule 7023 and allow a class proof of claim,

stating:

> Rule 9014 thus allows bankruptcy judges to apply Rule 7023-and thereby
> Fed.R.Civ.P. 23, the class action rule-to 'any stage' in contested matters.
> Filing a proof of claim is a 'stage'.  All disputes in bankruptcy are either
> adversary proceedings or contested matters, so Rule 23 may apply
> throughout a bankruptcy case at the bankruptcy judge's discretion.[15]

The Seventh Circuit also noted that when the bankruptcy judge further examined the

issue, he might well find that an order directing the trustee to send a notice of the

bankruptcy, the underlying state court proceeding and a proof of claim form to each of the

policyholders who was a potential claimant was a sufficient alternative to certifying a

class in the bankruptcy court.[16]  Subsequent rulings by the Eleventh Circuit in *Charter

Company*[17] and the Sixth Circuit in *Reid v. White Motor Corp.,*[18] have followed the

Seventh Circuit's approach and held that the filing of a class proof of claim is

permissible.

The Eleventh Circuit in *Charter Co.,* held that it would adopt the Seventh Circuit's

ruling in *American Reserve* and allow class proofs of claim to be filed.  In *Charter Co.,*

stockholders filed suit against the company on behalf of themselves and other

stockholders who had purchased stock during a certain period.  The suit was filed against

---

[15]  *In re American Reserve Corp.,* 840 F.2d 487, 488 (7th Cir. 1988)(internal citations omitted).

[16]  *In re American Reserve Corp.,* 840 F.2d 487, 493-494 (7th Cir. 1988)

[17]  *In re The Charter Company*, 876 F.2d 866 (11th Cir. 1989).

[18]  *Reid v. White Motor Corporation,* 886 F.2d 1462 (6th Cir. 1989).

the Charter Co. and its officers and directors in a federal district court in Florida. Two

weeks later on April 20, 1984, Charter Co. filed a Chapter 11 petition under the

Bankruptcy Code. The class action suit was thus stayed as to the debtor company but

continued as to the other defendants. On September 14, 1984, prior to the bar date, the

named representatives in the district court suit filed a class proof of claim appending a

consolidated and amended class action complaint to the proof of claim. The parties

attempted unsuccessfully to settle the dispute, negotiating for over two years. In August

1986 the district court certified the class, and on October 7, 1986 Charter Co. objected to

the proof of claim. The claimants responded to the objection by filing a motion

requesting that the court apply Bankruptcy Rule 7023 via Rule 9014. The court held that

the claimants timely filed their motion to apply Rule 7023 via Rule 9014 because until

there was a contested matter, i.e., the claim objection, the motion to apply Rule 7023

could not be ripe.

The *Charter Co.* court also distinguished its holding from a previous Eleventh

Circuit holding in *GAC Corp.,*[19] which disallowed a class proof of claim, on the basis that

in the *GAC* case the bankruptcy judge had set a bar date and in the bar date order had

required each creditor in the putative class to file an individual proof of claim. Copies of

the bar date order were mailed to each of the 280,000 putative class members and

published twice in 53 newspapers worldwide. Further, the representative claimant in

---

[19]  *In the Matter of GAC Corporation,* 681 F.2d 1295 (11th Cir. 1982).

9

*GAC* failed to file a motion to make Fed.R.Civ.P. 23 applicable.[20]  Thus, in *Charter Co.*

the Eleventh Circuit seems to make the distinction that where a class proof of claim is not

permitted by the bankruptcy judge, and members of a putative class are required to file

individual proofs of claim, the debtor must send actual notice to the putative class

members of the bankruptcy and the bar date for filing proofs of claim.

In *Reid*, a Sixth Circuit case, an attorney filed an action in Michigan state court

seeking class certification on behalf of his client and other former employees of the White

Motor Corp.[21]  The class was certified in state court on August 5, 1977; the defendant,

White Motor Corp., filed a voluntary Chapter 11 petition on September 4, 1980.  On

September 3, 1981 Reid, the Michigan attorney representing the class, filed a proof of

claim in the bankruptcy as the purported agent of the class, but provided nothing to show

his agency or authority to file a proof of claim on behalf of the class.  Reid did file an

attachment to the proof of claim listing names of individuals and dollar amounts, but did

not identify the individuals as former employees of the debtor or as members of the class.

No individual proofs of claim were filed by the individuals listed in the attachment to the

class proof of claim.  When the Chapter 11 petition was filed, the class action suit in state

court was stayed under §362 of the Bankruptcy Code, and the state court dismissed the

suit on July 12, 1983 for failure to prosecute.  The bar date for claims in the Chapter 11

---

[20]  *Id* at 1299.

[21]  *Reid v. White Motor Corporation,* 886 F.2d 1462 (6th Cir. 1989).

10

case was August 30, 1983, and after the bar date passed, the trustee filed an objection to the class proof of claim.

The *Reid* court also held that it would follow the Seventh Circuit's ruling in *American Reserve* to the extent that Bankruptcy Rule 9014 gives bankruptcy judges the discretion to invoke Rule 7023, and thereby Fed.R.Civ.P. 23, to any stage of contested matters, including class proofs of claim.[22] The court went on to find that in this particular case, the class proof of claim would be disallowed because Reid failed to timely petition the bankruptcy court to apply the provisions of Rules 9014 and 7023.[23] Additionally, Reid was not a member of the class he purported to represent; instead he was the attorney offering his services to the putative class, and as such he lacked standing to initiate the class action. Further, although an attorney could file a class proof of claim as an agent, Reid failed to file the paperwork required by Rule 2019 that would enable him to do so. Thus, although the Sixth Circuit in *Reid* approved of the Seventh Circuit's holding in *American Reserve* that class proofs of claim are permissible, the class proof of claim in *Reid* failed for procedural reasons.

The present motion for class certification was initially brought by the plaintiffs in

---

[22] *Reid v. White Motor Corporation,* 886 F.2d 1462, n.8 (6th Cir. 1989) (objection to class proof of claim creates contested matter for which bankruptcy court is permitted, but not obligated, to direct that Fed.R.Bankr.P. 7023 apply).

[23] *Id* at n.13 (court noted that Reid did not file his motion pursuant to Rule 9014 until after the bankruptcy court had granted the trustee's motion for summary judgment dismissing Reid's class proof of claim).

anticipation that class certification must be obtained before the plaintiffs' putative class representatives could file a class proof of claim. The court is sympathetic to the plaintiffs' desire to ascertain whether a class proof of claim would be acceptable to the court before the bar date had passed, so that if the class was not certified and individual claims were required from all the putative class members, the proper steps could be taken to ensure that those individuals were notified of the requirement in time to file individual proofs of claim. Although the procedure for requesting the application of Bankruptcy Rule 7023 to a contested matter appears to require the putative class member to file its class proof of claim, wait until an objection has been filed and then make a motion under Rule 9014 to apply Rule 7023,[24] the court will entertain the motion to certify a class filed by the Gordon and Lowenburg plaintiffs as if that procedure had been followed; now that there is an objection to the motion to certify the classes, there is a contested matter to which 7023 could be applied through Rule 9014.

Thus, the court must first determine whether or not to invoke Rule 7023, which would permit the court to decide whether or not, under Rule 7023, a class should be certified. Such a determination is wholly within the discretion of the court.[25] *American Reserve* and *Craft*[26] both provide good analyses of the factors a bankruptcy judge should

---

[24] *Reid v. White Motor Corporation,* 886 F.2d 1462 (6th Cir. 1989); *In re The Charter Company*, 876 F.2d 866 (11th Cir. 1989).

[25] *Reid v. White Motor Corporation,* 886 F.2d 1462 (6th Cir. 1989); *In re The Charter Company*, 876 F.2d 866 (11th Cir. 1989)*; In re American Reserve Corp.,* 840 F.2d 487 (7th Cir. 1988).

[26] *In re Craft*, 321 B.R. 189 (Bankr.N.D.Tex. 2005).

consider in determining whether or not to apply Rule 7023. *American Reserve* suggests

that the bankruptcy court consider whether allowing a class action will serve its purpose

of deterring bad behavior on the part of the debtor, whether the complications attending

the prosecution of a class action will unduly complicate the bankruptcy proceedings,

whether the suit is based on a sound legal theory, the amount of money at stake, and the

possibility of instead proceeding through the normal bankruptcy claim objection

process.[27] *Craft* states:

> Those courts that would equate the determination of a class under Rule
> 7023 with the determination of whether to apply Rule 7023 do not
> recognize the concerns peculiar to bankruptcy law–which are the
> appropriate bases for exercise of discretion under Rule 9014. These
> concerns properly include, to a greater or lesser degree, prejudice to the
> debtor or its other creditors, prejudice to putative class members, efficient
> estate administration, the conduct in the bankruptcy case of the putative
> class representatives, and the status of proceedings in other courts.[28]

The court will keep these factors in mind as a basis for its analysis of whether to apply

Rule 7023 to the instant case.

### 1.    Regulatory Considerations

One of the largest hurdles that the Gordon and Lowenburg plaintiffs must

overcome is the regulatory framework by which the debtor is governed, and the process

by which complaints involving the rates charged by the debtor to its customer are to be

adjudicated. The debtor is regulated by the City Council for the City of New Orleans

---

[27] *In re American Reserve Corp.,* 840 F.2d 487 (7th Cir. 1988).

[28] *In re Craft*, 321 B.R. 189, 198-199 (Bankr.N.D.Tex. 2005).

pursuant to Article IV, Section 21(c) of the Constitution of the State of Louisiana and the

Home Rule Charter of the City of New Orleans.  Under the Louisiana Constitution, the

Louisiana Public Service Commission ("LPSC") regulates most of the public utilities in

the state of Louisiana, but some utilities that were municipally regulated as of the

effective date of the Constitution continue to be regulated by those municipalities.[29]  New

Orleans is one of those municipalities.  Nonetheless, with respect to their duties as

regulators of public utilities, the City Council and the LPSC perform approximately the

same function; thus, the court finds that for purposes of the court's jurisdictional

analysis, the cases decided by Louisiana state courts with respect to the jurisdictional

powers of the LPSC can also be applied to the jurisdiction of the City Council.  The court

also notes that the City Council has made an appearance in this proceeding and objects to

class certification by this court of the Gordon and Lowenburg plaintiffs, in part on the

grounds that it has at least primary if not exclusive jurisdiction to determine the rights of

ratepayers with respect to rate matters concerning regulated utilities in the City of New

Orleans.

The Louisiana Supreme Court has addressed the issue of jurisdiction over state

regulated utilities in *Daily Advertiser v. Trans-LA*.[30]  In *Daily Advertiser* the plaintiffs

---

[29]  La. Const. Art. IV, § 21.  The current Louisiana Constitution was adopted in 1974, but the exception from LPSC jurisdiction for municipally regulated utilities is far older than the 1974 date.

[30]  *Daily Advertiser v. Trans-LA*, 612 So.2d 7 (La. 1993) (holding that where manipulation or abuse of fuel adjustment clauses is alleged, the regulatory body charged with overseeing the

were residential and commercial customers of Trans-LA, a provider of natural gas; the

customers attempted to file a class action suit in a state district court, alleging five state

law causes of action related to alleged overcharges by the utility: antitrust violations,

breach of contract *pour autrui*, breach of fiduciary duty, unjust enrichment, and fraud.[31]

The defendants filed an exception of lack of subject matter jurisdiction, claiming that only

the LPSC, the regulatory body charged with overseeing Trans-LA, could hear the case

because the LPSC had exclusive jurisdiction over the rates charged by Trans-LA.[32]  The

plaintiffs argued that because their petition alleged state law causes of action seeking

monetary damages that the LPSC could not hear their suit because it lacked the authority

to award the relief they were seeking.

> The Supreme Court described the jurisdiction of the LPSC as follows:

> An antitrust or a damage action, as plaintiffs couch their claims, generally
> would constitute a civil matter over which the district court would have
> jurisdiction; damage suits of all kinds have long been the warp and woof of
> the caseload of the courts.  Yet, the manner in which plaintiffs couch their
> claims does not automatically vest jurisdiction in the district court; rather,
> the nature of the relief demanded is dispositive.  Nor does the fact that a
> party to an action qualifies as a public utility automatically divest a court of
> original jurisdiction; however, that fact renders another constitutional
> provision arguably applicable.  The other relative constitutional provision is
> La. Const. Art. IV, § 21(B), which vests jurisdiction over public utilities in
> general and rates in particular in the LPSC, providing:

---

operation of such clauses has exclusive jurisdiction over challenges to such clauses).

[31]  *Id* at 13.

[32]  *Id* at 14.

The commission shall regulate all common carriers and public utilities
and have such other regulatory authority as provided by law.  It shall
adopt and enforce reasonable rules, regulations, and procedures
necessary for the discharge of its duties, and shall have other powers
and perform other duties as provided by law.

Construing this provision we have held that it grants in mandatory
language, constitutional jurisdiction to the commission over all common
carriers and public utilities.  We further have held that it provides the LPSC
with broad and independent regulatory powers over public utilities.  Indeed,
we have labelled (sic) the LPSC's jurisdiction over public utilities as
plenary.  We have also construed this provision as conferring upon the
LPSC exclusive jurisdiction, in the first instance, to fix or change any rate
to be charged by a public utility; the courts lack the power to fix or change
rates until the LPSC has acted.  Although courts are statutorily permitted to
change, modify, alter, or set aside orders of the Commission, as justice may
require, that statutory standard of review may not supercede or abrogate the
constitutional scheme in which *plenary* ratemaking authority is delegated to
the Public Service Commission.  The only jurisdiction courts have over the
fixing of utility rates is to review the LPSC's orders on appeal.  Even when
exercising appellate jurisdiction over a rate order, a court may not, in the
first instance, fix or change rates to be charged by a public utility, but rather
must remand to the LPSC for it to determine the appropriate rate to be
charged customers.[33]

The court went on to apply the exhaustion rule to matters involving the interpretation of

LPSC orders or regulations, i.e., that until the plaintiff has exhausted his available

remedies before the LPSC, he cannot resort to the courts.  The court also held that the

doctrine of primary jurisdiction required any matters related to the complaint that are not

within the jurisdiction of the LPSC, but are instead entitled to adjudication in district

court, be deferred until the LPSC proceeding is complete.[34]  Thus, the Louisiana state

---

[33] *Id* at 16-17 (internal citations omitted).

[34] *Id* at 30-31.

courts have developed a sort of bifurcated approach to handling suits against public

utilities that involve some aspect of the ratemaking powers of the regulating body

whereby the plaintiff is first required to pursue the available administrative remedies, and

upon failure to achieve relief, may in some circumstances pursue a claim in state court.

This appears to be the procedure followed by the Gordon and Lowenburg plaintiffs in

their respective claims until the debtor filed its Chapter 11 petition.

In light of the extensive proceedings already underway before the proper

administrative bodies and in the state courts, the court finds that the prescribed channels

for adjudication of rate related complaints against the debtor are apparently working as

they should; this is a factor weighing very heavily in favor of not invoking Rule 7023 in

this proceeding.

### 2.    Other Considerations

*American Reserve* directs the bankruptcy court to examine whether the class action

process is a more desirable process than ordinary claim adjudication.  The debtor argues

that requiring it to send out notification of the putative class action proceedings to some

180,000 of its former customers is prohibitively expensive.  Additionally, the debtor

opposes any reopening of the bar date to allow individual claims to be filed, claiming that

doing so would disrupt the formation of a reorganization plan.  The debtor also has stated

that it is willing to rely on the publicity surrounding its bankruptcy as well as the notices

it published in several local and national newspapers as sufficient notice for purposes of

17

barring putative class members who have not received actual notice from bringing claims at a later date.  The court has some concerns, however, especially given the language in the *American Reserve, Charter Co.,* and *Standard Metals* opinions indicating that in a situation where, as here, the debtor has the capability of sending actual notice to putative class members if the filing of individual claims is to be required, that those individual claimants should receive actual notice, especially if a class proof of claim is not allowed.

The debtor has not yet filed a plan of reorganization, nor does it appear close to doing so, thus the court does not see how the debtor could be prejudiced by a reopening of the claims bar date should the court decide to require the debtor to send actual notice to the putative class members.[35]  The court does recognize, however, that the costs that would be incurred by mailing notices and proof of claim forms to 180,000 potential class members are high and understands why the debtor would not welcome this added expense.  This inconvenience to the debtor must be balanced by the prejudice to the putative class members if their class proofs of claim are rejected.  The bar date has passed, so filing individual proofs of claim is no longer an option.  Further, most if not all of the putative class members are likely unaware that they have a potential claim at all, and would not know to file a proof of claim even if the bar date were reopened unless the court required notices to be sent.  Thus,  reopening the bar date without requiring

---

[35]  The debtor has filed a motion and scheduled a hearing on October 23, 2006 to request its third extension of the exclusivity period in which to file a plan of reorganization.  The debtor initially filed its Chapter 11 petition on September 17, 2005 and over one year has passed since then.

additional notice would seem to serve no purpose.

Fortunately, the agreement by the debtor, its parent, Entergy, Inc., and the unsecured creditor's committee, that they would not object to the proofs of claim of either the Gordon or the Lowenburg plaintiffs on the basis that a non-certified class representative filed a proof of claim on behalf of a subsequently certified class greatly simplifies the court's decision at this time.[36]  The court chooses not to apply Rule 7023 to the present motion for class certification, but will allow the Gordon and Lowenburg plaintiffs to make a motion to apply 7023 to any claim objection filed by the debtor in the event that either class is certified by a court hearing the actions for class certification. This should also alleviate the concerns of the City Council who objected to the motion for class certification arguing it had already held that class certification is not possible in a regulatory proceeding:

> As the elected representative of the residents of Orleans Parish and the regulatory authority with exclusive jurisdiction over [the debtor] ENO's provision of electric and gas service to customers in Orleans Parish, the Council represents and protects all ENO ratepayers.  Any relief ordered by the Council will accordingly include all relief to which any potential member of a class of such ratepayers is entitled.  Certification of Claimants in this Docket as representatives of a class of all persons who are or have been customers of ENO is thus unnecessary and inappropriate.[37]

The state courts have jurisdiction to determine whether that is so in the appeals from the City Council's decisions in both the Gordon and Lowenburg proceedings.  There is no

---

[36]  Transcript of excerpt of proceedings held March 29, 2006 (P-745) at pp.10, 12, 14, 16, 18-19.

[37]  New Orleans, LA Resolution R-04-66 (Feb. 5, 2004) at ¶ 6, filed as exhibit 1 to (P-711).

19

need for this court to interfere with the established process of adjudicating ratepayer/utility disputes.

### B.    Objection to proof of claim

The debtor objects to proof of claim number 326 filed by the Gordon plaintiffs and claim number 328 filed by the Lowenburg plaintiffs on the basis that it is not possible from the face of the claims to determine how the claims were calculated.  This is not surprising given that the claims are disputed and unliquidated.  Each claim consists of the official proof of claim form and an attachment that describes the nature of the state court and administrative proceedings that have been brought against the debtor.  The court holds that the documentation filed with the claims detailing the administrative and judicial remedies sought by the plaintiffs in other fora outside this court is sufficient documentation of the proof of claim at this time.  Although dollar amounts are listed on the proof of claim form, it is clear from the attachment that the actual claim amount will be the judgment awarded, if any, in the actions against the debtor.[38]  The debtor's request that the claimants provide a detailed calculation of the amount claimed will not be any more determinative of the actual amount of any claim than that which the claimants have already provided.  No one can be sure that there will be claims, or what the eventual claim amount will be.  If the need arises the court can estimate the claim for voting or other purposes under 11. U.S.C. § 502(c).

---

[38]  See footnote 8, *supra.*

Properly filing a proof of claim constitutes *prima facie* evidence of the claim's validity. If the debtor objects, it is its burden to present enough evidence to overcome the *prima facie* effect of the claim. If the debtor successfully rebuts the *prima facie* validity of the claim, then the claimant must come forward with additional proof.[39] The court overrules the debtor's objection to the two proofs of claim because the debtor provided no evidence to overcome the *prima facie* effect of the claims.

### III.    Conclusion

For the reasons set forth above, the court declines to apply Fed.R.Bankr.P. 7023 to this contested matter and will not certify either the Gordon plaintiffs or the Lowenburg plaintiffs as a class. The court denies the motion for summary judgment as to the objection to the proof of claim filed by each group. The court finds that the documentation appended to each proof of claim is sufficient at this time.

New Orleans, Louisiana, October 13, 2006.

Jerry A. Brown
U.S. Bankruptcy Judge

---

[39] *In re O'Connor,* 153 F.3d 258, 260 (5th Cir. 1998).

21