UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:                                                                                          CASE NO. 05-17697

ENTERGY NEW ORLEANS, INC.                                                  CHAPTER 11

    DEBTOR                                                                               SECTION "B"

## MEMORANDUM OPINION

This matter came on for hearing on January 11, 2008 on the objection of the debtor, Entergy New Orleans, Inc. ("ENOI") to the claims of Apache Corporation ("Apache"). For the reasons set forth below, the objection of ENOI is sustained, and the claims are disallowed.

**I.     Background Facts**

Apache's claims arise out of a Gas Purchase Agreement ("GPA") between ENOI, as the buyer, and Apache, as the seller, for the purchase by ENOI of natural gas from the Rigolets Field. In dispute are payments made for gas purchased by ENOI between January 1999 and February 2003. The terms of the GPA are somewhat unusual in that it is the buyer and not the seller of the gas who is responsible for measuring and testing the gas produced and then reporting the relevant information to the seller who then bills the buyer based on the information received from the buyer. At trial, it was explained that this was because the predecessors of the parties to the current contract had determined that for their convenience the buyer would be responsible for maintaining the meters and equipment.[1]

Thus, under the terms of the GPA, all measuring and testing equipment was to be

---

[1] Trial transcript at p. 136-37.

maintained, operated and furnished by ENOI, the buyer.[2]  The accountability and payment of the natural gas delivered under the contract was to be based on measurements made at ENOI's meter, which was located at the delivery point of the gas.[3]  ENOI reported the volume of gas produced each month as measured by ENOI's meter in the field to Apache who then billed ENOI for that gas under the terms of the GPA.[4]  ENOI was also required by the GPA to test the heating value or BTU content of the gas taken from the pipeline at least semi-annually to ensure that it was properly billed for the BTU content of the gas.[5]  Despite this the parties agree that during the time period in question, the gas was last tested for its BTU content in June 1999 and was not tested again until March of 2003.  Between June 1999 and March 2003 ENOI was billed for the BTU content of the gas using the results of the June 1999 test.[6]  ENOI did measure the volume of the gas monthly as required by the GPA and continued to send monthly reports to Apache with that information.[7]

Further complicating matters, on September 12, 2001 for reasons that were not conclusively shown at trial, Apache recalculated what it was owed for the period from January

---

[2] Exhibit 6 at § 11.5.

[3] Exhibit 6 at § 11.15.

[4] Trial transcript at p. 16 and p. 138.

[5] Exhibit 6 at § 11.8.  Trial transcript at p. 127-128.  The BTU content determined the price of the gas under § 8.1 of the GPA.

[6] The results of the March 2003 test showed a higher Btu content than the results of the June 1999 test, and Apache has calculated its claim for the entire period using the results of the 2003 test, which results in a higher payment being owed to Apache.  Because the court is not allowing the claim, it need not determine the numbers that should be used to calculate the claim.

[7] Exhibit 8A.

1999 through December 2000 and erroneously issued a credit to ENOI in the amount of $190,164.05.[8]  Apache thus seeks to recover this amount that it erroneously credited to ENOI.

ENOI does not dispute that it was incorrectly billed for the gas, nor does it dispute that the credit was issued in error.  ENOI's objection to the claim rests on two theories: first, that Apache's proof of claim was not timely filed and is therefore barred, and second that the GPA limits the time period in which claims can be made to two years from the date the cause of action arises.

## II.    Legal Analysis

### A.    The amendment did not relate back to the original proof of claim.

Because ENOI's objects on two separate grounds, the court will discuss each objection separately.  First, the court will address ENOI's contention that Apache's proof of claim was not timely filed.  The claims bar date in this case was set as April 19, 2006.  Apache timely filed proof of claim number 235 on April 13, 2006.  The claim was in the amount of $457,393.92.  Attached to the proof of claim form was an invoice for gas from the Rigolets Field for the month of August 2005 in the same amount of the claim.  Also attached to the proof of claim form was a two page document titled "Schedule A", which set forth in detail several potential claims against the debtor that were "including but not limited to the following claims": 1) Gas delivered to ENOI in August 2005 in the amount of $457,393.92; 2) Claim for loss of sales from December 10, 2005 forward due to the debtor's failure to repair gathering lines and other equipment; 3) Claim for damages and breach of duty under contract for failure to properly and timely repair

---

[8] The parties differ and it is unclear what prompted Apache to issue the credit or whether ENOI requested it, but that is not germane to this discussion.

facilities necessary to transport and receive gas under the GPA; 4) "Potential claim for lost profits, expenses, costs and/or damages arising out of or related to or in anywise appertaining to the GPA with the full amount not yet known pending a decision by debtor to assume/reject the GPA." The document also reserved Apache's rights to include "any and all of those claims, rights, duties, legal rights and obligations arising in connection with the GPA or otherwise."

Apache then filed an amended proof of claim number 541-1 in the amount of $1,732,535.92 on August 17, 2006, which was after the claims bar date. The amended proof of claim encompassed the claim for $457,393.92 for gas sold to ENOI in August 2005 made in the first proof of claim and added a claim based on Apache's receipt of an audit letter from the State of Louisiana for royalties due based on what the state claimed were incorrect BTU content calculations from October 1995 through March 2005.[9] Apache's position was that because this was a claim made under the GPA it related back to the first claim.

Finally, on August 17, 2007 after having more thoroughly researched the facts pertaining to the audit letter it had received from the state, Apache further amended its proof of claim by filing claim number 541-2 in the amount of $385,729.20. This represented the amount Apache claimed was due under the GPA as a result of the state audit. The amount represented errors Apache had determined were made in calculating ENOI's payments for gas between January 1999 and February 2003. This amended claim no longer included the claim for $457,393.92 for gas purchased in August 2005 that was the basis for the initial proof of claim. The claim for $457,393.92 had been paid in full by ENOI under its plan of reorganization because that portion of Apache's total claim was recognized by the debtor as an allowed unsecured claim.

---

[9] Exhibit 8(B).

In *In re Kolstad*, 928 F.2d 171 (5th Cir. 1991), the United States Court of Appeals for the Fifth Circuit held that, "amendments to timely creditor proofs of claim have been liberally permitted to 'cure a defect in the claim as originally filed, to describe the claim with greater particularity or to plead a new theory of recovery on the facts set forth in the original claim.'"[10] The *Kolstad* court cautions, however, that, "amendments do not vitiate the role of bar dates; indeed, courts that authorize amendments must ensure that corrections or adjustments do not set forth wholly new grounds of liability."[11]  *Kolstad* sets forth a framework for analyzing whether a bankruptcy court should properly grant leave to amend a claim, with the threshold question being whether the creditor is "attempting to stray beyond the perimeters of the original proof of claim and effectively file a 'new' claim that could not have been foreseen from the earlier claim or events."[12]  If the court finds that the amendment is sufficiently related to the original claim, then it should next examine "the degree and incidence of prejudice, if any" caused by the amendment by examining such things as surprise to the debtor and the other creditors, whether denying the amendment would provide the other creditors with an undeserved windfall, and whether the creditor negligently delayed in filing the amendment.[13]

Here, an examination of the three proofs of claim do not support Apache's position that its amendments relate back to the original proof of claim.  The original proof of claim attaches a

---

[10]  *Kolstad* at 175 (quoting *In re Int'l Horizons, Inc.,* 751 F.2d 1213,1216 (11th Cir. 1985)).

[11]  *Kolstad* at 175 (citing *Matter of Commonwealth Corp.,* 617 F.2d 415, 420 (5th Cir. 1980)).

[12]  *Kolstad* at 176 n.7.

[13]  *Kolstad* at 176, 176 n.7.

copy of the invoice for $457,393.92 for gas purchased in August 2005. Additionally, "Schedule A" also attached to the proof of claim specifically identifies potential claims arising from ENOI's failure to repair the damage to the gas lines and facilities sustained during Hurricane Katrina at the end of August 2005 as well as potential claims arising from breach of contract due to that same damage. Finally, "Schedule A" contemplates damages that might arise had ENOI decided to reject the GPA during the course of its reorganization. None of these form the basis for the amendments (POC 541-1 and 541-2).

To the contrary, the amendment to the proof of claim attempts to recover losses dating back to errors in calculating gas volume and invoice amounts from 1999 through 2003. This is in no way related to the actions specifically identified in the original proof of claim. Although certain language in "Schedule A" attached to the original proof of claim does reserve "any and all of those claims, rights, duties, legal rights and obligations arising in connection with the GPA or otherwise," this language does not give Apache the right to file any conceivable claim that can be connected in any way to the GPA no matter what it might be. If this were the allowable, then any creditor filing a proof of claim in a bankruptcy proceeding could include a short paragraph of reservation of rights language and have a claim against the debtor for anything that happened between that creditor and the debtor from well before the beginning of the case until the case closed, which in certain bankruptcy cases could mean a period of several years if not decades. This would essentially "vitiate the role of bar dates," which are to "enable a debtor and his creditors to know, reasonably and promptly, what parties are making claims against the estate and in what general amounts."[14]

---

[14] *Kolstad* at 173.

The court finds that the first part of the *Kolstad* test is not met with respect to the connection between the original claim and the amendment.  Although the court does not find that Apache negligently delayed an unreasonable amount of time to bring the claim, and allowing the amendment in this particular case would not particularly prejudice any of the other creditors under the *Kolstad* test, there is certainly prejudice to the debtor here, and in any event the threshold part of the test has not been met.  The court therefore finds that Apache's amendments are not proper amendments, and thus its claim was not timely filed.

### B.    The claim is barred by the prescriptive period in the contract.

Although the court found that the claim was not timely filed, it will nonetheless address ENOI's second argument that the GPA itself prohibits Apache from making the claim because it contains a clause limiting actions to a two year period.  At trial, the testimony showed that even though the GPA called for ENOI to quality test the gas's BTU content every six months to determine the contract price, the gas was not tested between June 1999 and March 2003.[15] Instead, the price of the gas was calculated using the June 1999 test results for over three years. When the BTU content was finally tested again in March 2003, the results were such that the gas price was higher than when compared to the June 1999 test.[16]

Additionally, it was ENOI's responsibility to check the volume of gas passing through the pipeline each month and submit its meter's volume readings of the gas to Apache along with the relevant BTU content data each month.  The evidence shows that ENOI did check the volume of gas monthly and that generally a worker representing Apache's interests would

---

[15] Trial transcript at p. 26 & 139-41.

[16] Trial transcript at p. 63.

accompany the ENOI workers to the site and check the volume meter measurements monthly from Apache's quality control check meter.[17]  The evidence also showed that ENOI did send Apache monthly statements with the requisite volume data.  The statements did not always include the BTU content data that ENOI was supposed to supply, however.  The statements from January 1999 to May 1999 gave the Real Dry BTU as 998.9; the June 1999 and August 1999 statements gave the Real Dry BTU as 999.7; the September 1999 to December 1999 statements had no BTU figure but instead stated "Use Previous Month," and beginning in January 2000 to February 2003, the statements said either "No Data Available," "Unavailable" or "Not Available."[18]  Finally, the evidence showed that Apache received a letter from the State of Louisiana in February 2006 initiating the audit process with respect to the Rigolets gas field royalty payments.[19]

The GPA at section 17.3 states: "Corrections to invoices shall be reflected in revised invoices as soon as practicable after the discovery of an inaccuracy; however, neither party shall have an obligation to correct any inaccuracies which occurred more than two (2) years prior to discovery of the inaccuracy."  Additionally, section 21.4 provides: "No action or claim regardless of form, arising out of any transaction may be brought by either party more than two (2) years after the cause of action has arisen."  Thus, the parties have contracted for a two year

---

[17]  Trial transcript at p. 169-71

[18]  Trial transcript at p. 45-52; Exhibit 8(A).  The statement for the month of July 1999 was distorted, and the court could not determine whether it contained the proper data or not.

[19]  Exhibit 8(B).

prescriptive period under Louisiana law for any claims to be brought under the GPA.[20] As a defense to this two year prescriptive period, Apache claims that the doctrine of *contra non valentem* applies.

The doctrine of *contra non valentem agere nulla currit praescriptio* means that prescription does not run against a person unable to bring his suit."[21] Louisiana courts have recognized four instances where *contra non valemtem* can be applied to prevent the running of prescription:

   1) Where there is some legal cause that prevents the courts or their officers from taking cognizance or acting on the plaintiff's action;

   2) where there is some condition coupled with the contract or connected with the proceedings that prevents the creditor from suing or acting;

   3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; or

   4) where the cause of action is not known or reasonably knowable by the plaintiff even though this ignorance is not induced by the defendant.[22]

Apache argues that either the third or fourth category listed is applicable to its situation; thus, the first two categories need not be discussed here.

---

[20] Under Louisiana law, parties to a contract are free to contract for any object that is lawful, possible, and determined or determinable. La. Civ. Code Art. 1971. While parties may not contract to lengthen a prescriptive period, there is nothing prohibiting the shortening of a prescriptive period as the parties have done here. *Leiter Minerals, Inc. v. California Co.,* 132 So.2d 845 (La. 1961); 6 Saul Litvinoff Louisiana Civil Law Treatise, Law of Obligations § 11.22 (2d ed.).

[21] *Carter v. Haygood*, 892 So.2d 1261, 1268 (La. 2005).

[22] *Id. See also Edmunson v. Amoco Production Co.,* 924 F.2d 79, 82 (5th Cir. 1991).

The third category of the *contra non valentem* defense has been held to apply to, "situations where an innocent party has been lulled into a course of inaction in the enforcement of his right by reason of some concealment or fraudulent conduct on the part of the defendant, or because of his failure to perform some legal duty whereby plaintiff has been kept in ignorance of his rights."[23] ENOI's representative testified that ENOI did not perform the BTU content measurements because the laboratory equipment it needed to do so was broken for an extended period of time.[24] There was no evidence or testimony that ENOI took any actions that would amount to fraudulent or deceptive conduct. Nor was it shown that ENOI owed any type of legal duty such as a fiduciary duty to Apache that would result in the application of the *contra non valentem* defense under the third category. Although ENOI did not properly perform its contractual duty to Apache to test the BTU content of the gas, the duty owed between parties to a contract is merely a duty to perform the contract in good faith not a legal duty as called for by the cases interpreting the *conta non valentem* doctrine.[25]

The fourth category where *contra non valentem* applies in certain cases where the plaintiff, through no fault of the defendant, did not know of the cause of action. This category, however, "will not except the plaintiff's claim from the running of prescription if his ignorance is attributable to his own willfulness or neglect; that is, a plaintiff will be deemed to know what

---

[23] *Carter v. Haygood* at 1269.

[24] Trial transcript at p. 140.

[25] La. Civ. Code Art. 1983. *See e.g. Carter v. Haygood, supra* (continuing doctor patient relationship resulted in duty to patient that interrupted prescription); *Braud v. New England Insurance Co.,* 576 So.2d 466 (La.1991) (prescription suspended during attorney's continuous representation of client regarding the specific subject matter in which alleged wrongful act occurred).

he could by reasonable diligence have learned."[26] The court finds that taken together the testimony and evidence showed that Apache knew or should have known that ENOI was not testing the BTU content of the gas as it should have been. There is enough difference in the monthly statements submitted to Apache by ENOI that the court concludes that reasonable diligence should have led someone at Apache to question why the BTU content data was no longer being provided. It is not as if the data was never provided. It was provided, and then suddenly it was unavailable. The court finds that it is not above or beyond the standard of reasonable diligence to expect a company such as Apache to have in place some sort of accountability system such that when statements are received from a buyer that state that data necessary to calculating the price of goods is unavailable, over the period of almost three years, someone at Apache would at some point take notice or ask some questions. Apache failed to take any action with respect to this failure to provide the data and cannot now complain of the consequences of that inaction. Although the management or accounting auditors at Apache may not have in fact known of this information, the legal standard set forth by the Louisiana courts is whether Apache could by the exercise of reasonable diligence have learned of the facts. This court finds that it could have.

As for the claim related to the credit that Apache erroneously gave ENOI on September 12, 2001, Apache's witness testified that pursuant to his knowledge of the company procedures, ENOI would have had to request that credit in order for Apache to have issued it.[27] The circumstances surrounding the issuance of the credit were unclear, however, and no testimony or

---

[26] *Corsey v. State Dept. of Corrections,* 375 So.2d 1319, 1322 (La. 1979).

[27] Trial transcript at p. 68-73.

evidence was produced to show that ENOI engaged in any type of concealment or fraudulent conduct to obtain the credit. The credit appears to have been issued because of some confusion in the calculation of the proper pressure base to use in billing ENOI. The court does not find that Apache showed that the circumstances surrounding the issuance of the credit warrant the application of the *contra non valentem* doctrine as a defense to the two year prescriptive period set forth in the contract between the parties. Thus, the court finds that both Apache's claim for underpayment and its claim for the erroneously issued credit are barred by the two year prescription period set forth in the GPA.

### III. Conclusion

For the reason set forth in this memorandum opinion, the court finds that Apache's claims are barred both because Apache's amended proofs of claim with respect to these particular claims were not filed before the claims bar date had passed and because the claims were brought after the two year prescription period set forth in the GPA had passed. Apache's claims are therefore dismissed.

New Orleans, Louisiana, July 17, 2008.

*[signature: J. A. Brown]*
Jerry A. Brown
U.S. Bankruptcy Judge